IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| ONEOK Rockies Midstream, L.L.C., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Midway Machining, Inc. and ) <br> Dakota Fluid Power, Inc., ) <br> ) <br> Defendants. ) <br> ) | **ORDER DENYING DEFENDANT MIDWAY MACHINING'S MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 1:23-cv-044 |

Before the Court is Defendant Midway Machining, Inc.'s ("Midway") motion for summary judgment filed on September 25, 2023. See Doc. No. 25. The Plaintiff filed a response in opposition to the motion on October 16, 2023. See Doc. No. 31. Midway filed a reply brief on October 30, 2023. See Doc. No. 36. For the reasons set forth below, the motion is denied.

I.     **BACKGROUND**

ONEOK Rockies Midstream, L.L.C. ("ONEOK") is a midstream service provider that gathers and processes natural gas. ONEOK owns and operates the Stateline Gas Plant ("Stateline") near Williston, North Dakota. Midway is a South Dakota corporation with its principal place of business located in Mandan, North Dakota. Midway is a subsidiary and/or division of Dakota Fluid Power, Inc. Midway is in the business of, among other things, performing repairs on industrial equipment, including welding and machining motor shafts. Great Plains Technical Services, Inc. ("Great Plains"), who is not a party to this suit, services and repairs industrial equipment.

ONEOK uses various compressors powered by electric motors at Stateline. In 2017, ONEOK experienced problems on two motors on one of the compressor trains at Stateline. ONEOK hired Great Plains to evaluate, analyze, and repair the motor on one of the compressors.

1

Great Plains concluded that the motors required repairs to the motor shaft, including performing a weld. Great Plains sent the motor to Midway after determining it did not have the expertise to perform the weld itself. Midway welded a half key into the keyway of the motor shaft. Midway then gave the shaft to Great Plains. Thereafter, Great Plains returned the motor to ONEOK at Stateline. On or about July 8, 2018, a failure of the compressor train occurred and resulted in a fire. The fire caused extensive damage to the building and its contents. ONEOK alleges it suffered property damage in excess of $13,000,000 and business interruption damages in excess of $6,500,000 as a result of the compressor failure and fire.

In 2020, ONEOK filed a complaint against Great Plains in Oklahoma state court, which was removed to federal court. See ONEOK Rockies Midstream, L.L.C. v. Great Plains Tech. Servs. Inc., No. 20-CV-0580-CVE-SH. ONEOK's insurer sought recovery of amounts it paid to ONEOK pursuant to its first party insurance policy through the lawsuit. ONEOK alleged that "Great Plains sent the motor to its subcontractor who, under the direction and control of Great Plains and/or Great Plains' instruction, improperly welded a 1/2 key into the keyway of the motor shaft…ONEOK relied on Great Plains' expertise and representations that the shaft was properly repaired." See Doc. No. 27-6, pp. 3-4. ONEOK brought negligence, breach of implied warranty, breach of contract, and breach of express warranty claims. Neither ONEOK nor Great Plains attempted to join Midway in that litigation. However, ONEOK served a subpoena on Midway for documents during discovery and completed the deposition of former Midway employee Jospeh Roll, who performed the weld. ONEOK and Great Plains ultimately entered into a settlement agreement releasing Great Plains and its agents.

On March 3, 2023, ONEOK initiated this action by bringing a negligence claim against Midway and Dakota Fluid Power, Inc. See Doc. No. 1. Jurisdiction in this case is based on diversity

of citizenship. The Court is satisfied that the parties are diverse. On September 25, 2023, Midway moved for summary judgment. See Doc. No. 25. The motion has been fully briefed and is ripe for disposition.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment.

Anderson, 477 U.S. at 252. If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

### III.     LEGAL DISCUSSION

#### A.     ECONOMIC LOSS DOCTRINE

Midway argues the economic loss doctrine bars ONEOK's negligence claim. Midway also argues ONEOK's negligence claim is effectively a breach of contract claim. ONEOK argues the economic loss doctrine does not apply to its negligence claim because it only applies to contracts for the sale of goods, rather than services. ONEOK further asserts it negligence claim is independent of a contract claim because no contract existed between the parties.

"Under the [economic loss] doctrine, economic loss resulting from damage to a defective product, as distinguished from damage to other property or persons, may be recovered in a cause of action for breach of warranty or contract, but not in a tort action." Steiner v. Ford Motor Co., 606 N.W.2d 881, 884 (N.D. 2000). "The economic loss doctrine is based on the understanding that contract law, and the law of warranty in particular, is better suited for dealing with purely economic loss in the commercial arena than tort law, because it permits the parties to specify the terms of their bargain and to thereby protect themselves from commercial risk." Dakota Gasification Co. v. Pascoe Bldg. Sys., 91 F.3d 1094, 1098 (8th Cir. 1996).

When discussing the rationale behind the economic loss doctrine, the United States Supreme Court stated,

> While giving recognition to the manufacturer's bargain, warranty law sufficiently protects the purchaser by allowing it to obtain the benefit of its bargain. The expectation damages available in warranty for purely economic loss give a plaintiff the full benefit of its bargain by compensating for forgone business opportunities .

4

> . . A warranty action also has a built-in limitation on liability, whereas a tort action could subject the manufacturer to damages of an indefinite amount. The limitation in a contract action comes from the agreement of the parties and the requirement that consequential damages, such as lost profits, be a foreseeable result of the breach.

E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 865, 873-74 (1986) (internal citations omitted).

In this case it is undisputed that no contract existed between ONEOK and Midway. The only contract referenced by Midway is the Master Service Agreement between ONEOK and Great Plains. Midway was not a party to the Master Service Agreement. Midway admits no contract existed between ONEOK and Midway. Nevertheless, Midway argues the Plaintiff's negligence claim is effectively a breach of contract claim. The Court concludes the Plaintiff has clearly pled a negligence claim and no contract existed that could serve as the basis for a breach of contract claim.

Midway did not sell any goods to ONEOK or Great Plains. The undisputed evidence in this case reveals Midway provided only welding services. Accordingly, this case does not present product liability or warranty issues. The sole issue is the service Midway provided in evaluating, assessing, and repairing the motor shaft. ONEOK argues the economic loss doctrine does not apply to its claim as the doctrine only applies to contracts for the sale of goods. ONEOK contends 1) there was no contract between ONEOK and Midway; and 2) no products are at issue in this case. Midway does not dispute ONEOK's arguments that the economic loss doctrine applies only to contracts or its argument that no products are at issue in this case. Midway's only contention is that the economic loss doctrine applies to service contracts in addition to contracts for the sale of goods. The purpose of the doctrine is to ensure parties are bound by the terms of their contract and cannot expand the terms by alleging tort claims. When there is no contract, as is the case here, no

contractual limitations exist and warranty law does not protect ONEOK. The economic loss doctrine does not apply because no contract existed between ONEOK and Midway.

Although the North Dakota Supreme Court has not determined whether the economic loss doctrine applies to service contracts, Midway urges the Court to apply the doctrine to service contracts. Even if this Court found that the economic loss doctrine applies to service contracts, the Plaintiff's claim would be barred due to the absence of any contract between ONEOK and Midway that could serve as the basis for the claim. Therefore, the Court denies Midway's motion for summary judgment.

### B.   OKLAHOMA LITIGATION

The settlement agreement in the Oklahoma litigation states in relevant part:

> **ONEOK does hereby fully, finally, completely and absolutely RELEASE, REMISE, ACQUIT and FOREVER DISCHARGE Great Plains, a North Dakota Corporation; its insurers … and each of Great Plains' … respective past, present and future successors, assigns, agents, attorneys, parent companies, subsidiaries, affiliates, divisions, predecessors, principals, servants, claims administrators and representatives** … of and from any and all, and each and every, right(s), claim(s), demand(s), action(s), injury/injuries, remedy/remedies, cause(s) of action, debt(s), liability/liabilities, contract(s), damage(s), cost(s) (including, without limitation, attorneys' fees, expert witness fees, and all other expenses and costs of court or other proceedings), expense(s) and loss/losses of every kind or nature, whether arising by contract, tort or other theory, at this time known or unknown, direct or indirect, asserted or unasserted, fixed or contingent, in law, by statute, by regulation, by court order, or in equity, that ONEOK ever had, could have had, or now has, for, upon or by reason or arising out of any event, occurrent, circumstances, action, inaction, or matter arising out of or in any way related to the claims or facts asserted in the above-captioned lawsuit arising out of the incident occurring on July 8, 2018, at the ONEOK Rockies Midstream, L.L.C., Stateline Gas Plant in Williston, North Dakota.

See Doc. No. 30, pp. 2-3 (emphasis added).

Midway argues it was Great Plains' agent for purposes of working on ONEOK's motor shaft and accordingly the language in the settlement agreement releases all claims against Midway.

In support of its contention, Midway contends the settlement agreement does not define the term "agent" and does not carve out an exclusion for Midway. ONEOK argues Midway was not specifically named as a released party in the settlement agreement and Midway was not Great Plains' agent.

ONEOK and Midway agree Midway acted as a subcontractor for Great Plains. However, Midway argues that as a subcontractor it was also Great Plains' agent and therefore a released party under the terms of the settlement agreement. The parties agree that Oklahoma law applies as to interpretation of the terms of the settlement agreement. Under Oklahoma law, status as a subcontractor does not automatically result in status as an agent of the principal. "The law does not presume an agency status is present. The burden of proving the existence, nature and extent of the agency relationship rests ordinarily upon the party who asserts it." Enter. Mgmt. Consultants, Inc. v. State ex rel. Oklahoma Tax Comm'n, 1988 OK 91, 768 P.2d 359, 362. "Agency is generally a question of fact to be determined by the trier. Only where the facts relied upon to establish the existence of the agency are undisputed and conflicting inferences cannot be drawn therefrom is the question of whether or not an agency exists one of law for the court." Thornton v. Ford Motor Co., 2013 OK CIV APP 7, ¶ 17, 297 P.3d 413 (internal citations omitted). When determining whether a subcontractor is also an agent, Oklahoma courts look to whether the subcontractor "contracts to do a certain thing according to his own methods and without being subject to control of the principal except as to the result of the work." Cahill v. Waugh, 1986 OK CIV APP 4, ¶ 10, 722 P.2d 721. Citing to *Cahill*, the Court of Appeals of Oklahoma has rejected the "suggestion that the simple act of hiring an independent contractor and communicating to the independent contractor the task required, or even specifying a time to perform the work and/or to complete the

task, changes the nature of the relationship between the parties." Lane-Hill v. Ruth, 1995 OK CIV APP 155, 910 P.2d 360, 362.

Midway has the burden of proof as the party asserting the existence of an agency relationship. Midway references ONEOK and the Great Plains' Master Service Agreement ("MSA") in support of its argument. In the MSA, the terms "agents" and "subcontractors" are sometimes grouped together. For example, Section 19 of the MSA states, "Contractor agrees to comply, and shall cause its employees, agents, and subcontractors to comply, with all statutes, regulations, rules, ordinances, orders, and court or agency decisions applicable to its performance of the Work." See Doc. No. 27-2, p. 12. The MSA's grouping of agents and subcontractors together does not mean status as a Great Plains subcontractor automatically results in status as a Great Plains agent. Rather, the inclusion of both the words "subcontractors" and "agents" reveals ONEOK and Great Plains made a distinction between the two types of relationships when contracting. Midway does not cite to any language in the MSA that addresses whether Great Plains controlled the method or manner in which Midway performed its work. Midway also argues ONEOK expected and required Great Plains to exert control over the work completed by all subcontractors, including Midway. However, Midway did not present evidence showing that it was actually subject to Great Plains' control.

In support of ONEOK's contention that Midway was not an agent of Great Plains, ONEOK cites to the testimony of Shane Johnson, a Great Plains representative. Johnson testified as to Great Plains' relationship with Midway:

> Q: How did Great Plains Technical Services know that its vendors were qualified to perform the work they were being asked to perform and that its equipment were properly calibrated and of the proper use for the type of work that Great Plains

> Technical Services was sending the equipment to be repaired?
>
> A: We're going off of their reputation. That's – I mean, yeah, that's their qualification.
>
> . . .
>
> Q: What did Great Plains Technical Services do to ensure that Midway Machining was a quality machine shop that was able to perform the work that ONEOK needed in a good, workmanlike manner?
>
> A: I told you its's because their reputation and word of mouth, and they've been around longer than all of us here, so you – it's trusting them. But as far as going in and calibrating their stuff, no, I didn't make sure everything's calibrated.
>
> . . .
>
> Q: [Y]ou at Great Plains did nothing to calibrate machines, did nothing to inspect machines, did nothing to ensure the qualifications of any of the people at Midway Machining; it's simply a company that Great Plains had a relationship with?
>
> A: Correct.

See Doc. No. 27-4, pp. 17-19.

> Q: How did you know what welds were going to be performed on the shaft?
>
> A: I'm trusting the machine shop that I've used for yours. If – if they didn't think it was going to work – they would – they wouldn't let me – they wouldn't do it.
>
> . . .
>
> Q: And if that keyway shouldn't have been there in the first place, is it okay – is it generally accepted in your field to simply weld over the half key inside the keyway?
>
> A: I'm trusting my machine shop. They – they've done it before, so I'm trusting the people that have done it.

> . . .
>
> Q: And so it was – as far as Great Plains Technical Services was concerned, welding the half key into the keyway was an acceptable means of repairing the shaft?
>
> A: Trusting my machine shop.

Id. at p. 29.

Johnson's testimony demonstrates, at least arguably, that Great Plains relied on Midway's reputation and expertise rather than directing Midway's manner or method of work. Viewing the facts in a light most favorable to ONEOK at this stage, a reasonable jury could arguably find that Midway was not subject to Great Plains' control. Thus, the Court cannot conclude that Midway was Great Plains' agent. As a result, genuine issues of material fact exist as to whether Midway was an "agent" for the purposes of the settlement agreement in Oklahoma.

### C. DUTY

Under North Dakota law, the elements of negligence are "(1) duty; (2) breach of that duty; (3) causation and (4) damages." Barbie v. Minko Const., Inc., 766 N.W.2d 458, 461 (N.D. 2009). Midway argues it did not owe a duty to ONEOK as a third party. In determining whether a duty exists to a third party the North Dakota Supreme Court has stated,

> The court must balance the following factors when determining the existence of duty in each particular case: (1) foreseeability of harm to plaintiff; (2) degree of certainty that plaintiff suffered injury; (3) closeness of connection between defendant's conduct and injury suffered; (4) moral blame attached to defendant's conduct; (5) policy of preventing future harm; (6) extent of burden to defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach; and (7) availability, cost and prevalence of insurance for the risk involved.

Cichos v. Dakota Eye Inst., P.C., 2019 ND 234, ¶ 6, 933 N.W.2d 452 (citations omitted). "The question of whether there is a duty is generally a preliminary question of law for the court to decide.

10

If, however, the existence of a duty depends upon factual determinations, the facts must be resolved by the trier of fact." Madler v. McKenzie Cnty., 467 N.W.2d 709, 711 (N.D. 1991). In this case, analysis of some the factors used to determine the existence of a duty are dependent on genuine issues of material fact that must be determined by a jury. For example, the closeness of connection between the defendant's conduct and the injury suffered are dependent on the cause of the fire. As discussed below, based on contrasting expert opinions the Court concludes reasonable persons could reach differing conclusions regarding the cause of the fire. Accordingly, for the purposes of this summary judgment motion, there are genuine issues of material fact in dispute and the Court cannot conclude as a matter of law that Midway did not owe a duty to ONEOK.

### D.     **BREACH OF DUTY**

Midway also argues ONEOK had not offered any evidence to establish what the standard of care is for a welder repairing scalding on a motor shaft or any evidence that the standard of care was breached. ONEOK maintains its expert disclosures from the Oklahoma litigation sufficiently set forth the standard of care and breach of that standard. The litigation in this case presents a somewhat problematic timeline. In the Rule 16 conference, ONEOK urged the Court to establish an early deadline for dispositive motions, claiming all the evidence it needs in this case has been found in discovery conducted in the Oklahoma litigation. ONEOK argued it would be most efficient to present legal defenses that would dispose of the case sooner rather than later. Midway accommodated ONEOK's preference by filing an early dispositive motion based on the existing record. As a result, much of the evidence presented thus far is a product of the Oklahoma litigation and is primarily focused on ONEOK's relationship with Great Plains rather than its relationship with Midway. In its response in opposition to summary judgment, ONEOK acknowledges its

11

encouragement of an early motion for summary judgments on legal issues but points out that expert designations are not yet due in this case. Nevertheless, ONEOK's expert disclosures from the Oklahoma litigation sufficiently set forth the standard of care owed and breach necessary to sustain a negligence claim against Midway at this stage.

In the Oklahoma litigation, ONEOK retained Patrick Bolster, P.E. to render opinions regarding the keyway weldment. According to ONEOK, Bolster is an expert in materials, welding, hard facing and nondestructive examination. Both Bolster's report (Doc. No. 34-9) and affidavit (Doc. No. 34-8) sufficiently set forth the requisite standard of care for the welding work Midway completed and a breach of that standard.

For example, Bolster stated in his affidavit:

> As reflected in my report, the half-key and motor shaft were made of high carbon content materials not typically used in welded assemblies. A qualified welder should be aware that these materials are likely to produce a brittle weld area in the shaft material heat affect zone (HAZ), much more susceptible to cracking than unwelded material. Welding these materials typically require a written procedure setting forth the special low-hydrogen welding practices, high heat, post-weld heat treatment and quality inspection and testing procedures.

See Doc. No. 34-8, p. 1. Bolster adequately outlined the requisite standard of care for Midway. Bolster continued, "It does not appear that these practices were followed by Midway… Based on his testimony, Mr. Roll used an inadequate preheat temperature (too low) for welding on the shaft material and too low for the key material." Id. Bolster clearly identified how Midway breached the standard of care by not following generally accepted welding practices. Further, according to Bolster, Midway failed to utilize a post weld heat treatment to improve the microstructure resistance to possible brittle fracture, environmental cracking, and residual stresses induced by the incorrect weld groove design. Bolster also specified that nondestructive examination ("NDE") of the weld assembly should have been undertaken to identify otherwise latent defects, but Midway

12

failed to perform a final NDE of the welded assembly. Bolster stated, "Omission of a NDE inspection after welding and prior to installation of the compressor means Midway Machining did not meet the generally accepted welding standards." Id. at p. 2. The Court concludes ONEOK has presented sufficient evidence establishing the standard of care for a welder repairing scalding on a motor shaft and how Midway breached that standard when performing welding work on ONEOK'S motor shaft. The Court denies Midway's motion for summary judgment.

### D. CAUSATION

Midway contends ONEOK has not established that Midway's welding caused the fire. Midway and ONEOK both summitted reports and affidavits of expert witnesses which provide different opinions as to the proximate cause of the fire. These contrasting expert opinions demonstrate that material factual disputes exist which preclude the grant of summary judgment. Midway cites to Great Plain's expert report by Bruce Pinkston, PhD, P.E. (Doc. No. 27-3) from the Oklahoma litigation. For example, Dr. Pinkston opined that the propane compressor skids used by ONEOK were designed, manufactured, and installed defectively. Id. at p. 2. According to Dr. Pinkston, the pedestals supporting the motor and compressor enabled vibration from the compressor to continuously affect alignment of the assembly. According to Dr Pinkston, "[t]he motor shaft failed because it was the weakest component in the stack of rotating elements" and "was the only element to be subject to amplified stresses…caused by the unnecessary keyway." Id. at p. 4. Midway argues Dr. Pinkston's conclusions reveal Midway's welding was not the proximate cause of the fire.

ONEOK cites to its expert report by Quentin Bake, P.E., CFEI (Doc. No. 34-11) from the Oklahoma litigation. Baker opined that the cause of the fire was the failure of the motor shaft. Id.

at p. 32. He stated, "The shaft seal on the compressor leaked due to shaft displacement after failure, and the released flammable vapors promptly ignited. Ignition most likely occurred at the shaft failure due to rubbing and impact of the fracture surfaces." Id. According to Baker, a crack originated at a weld in the key in the motor shaft. "Welding of the keyway created stress concentrations that were at or near the yield stress at the perimeter of the keyway in the weld material. The stress concentrations reduced the torque at which yielding would occur by about 21 percent. In addition, a region of stress concentration was created by the welding that extended along the perimeter of the keyway." Id. The Court finds reasonable persons could reach differing conclusions regarding the cause of the fire. The record clearly establishes the existence of genuine issues of material fact in dispute regarding the cause of the fire. Therefore, summary judgment is precluded at this stage.

### IV.   CONCLUSION

The Court finds that genuine issues of material fact exist and summary judgment is not warranted at this stage. For the reasons set forth above, Midway's motion for summary judgment (Doc. No. 25) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 5th day of June, 2024.

/s/ Daniel L. Hovland
Daniel L. Hovland, District Judge
United States District Court